JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 19-2124 JGB (SPx)** | Date | July 8, 2022 |
|---|---|---|---|
| Title | *Reginald Moore, et al. v. Universal Protection Service, LP d/b/a Allied Universal Security Services* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    Order (1) GRANTING Plaintiffs' Motion to Confirm Award (Dkt. No. 247); and (2) VACATING the July 11, 2022 Hearing (IN CHAMBERS)

Before the Court is an unopposed motion to confirm award filed by Plaintiffs Reginald Moore, Eduardo Guerra, and Alisa Jones (collectively, "Plaintiffs"). ("Motion," Dkt. No. 247.) The Court determines this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the Motion, the Court GRANTS the Motion. The Court VACATES the hearing set for July 11, 2022.

I.    BACKGROUND

On November 5, 2019, Plaintiffs commenced this action against Universal Protection Service, LP d/b/a Allied Universal Security Services ("Defendant"). ("Complaint," Dkt. No. 1.) Plaintiffs amended the Complaint on November 19, 2019. ("FAC," Dkt. No. 23.) The FAC alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and violations of California and Colorado state law. (Id.)

On November 6 and 7, 2019, Plaintiffs filed consent to join forms for Milagros Almonte, Denise Aquino, Crystal Brandly, Damaura Christian, Austin Salle, Nancy Sindar, Esther Shipley, Robert Snyder, and Erica McGee. (Dkt. No. 11.) Consent to join forms followed for Tonya Brown, Christina Capstraw, David Capstraw, II, Jalee Outlaw, Bernard Tyree, James Boggs, Ronald Burkhammer, Alice Dawson, Anicia Grant, Tanesha Johnson, Andrew Moses, Darrius Patterson, Donald Sandoval, Michael Smith, Khristian Thornton, Taminka White, Brian

Wilburn, King Bandoh, Angel Grant, Dennis Clay, Levi DeMasi, Justin LeBlanc, Kimberly Adam, Beatrice Augusta, Shakamree Cauthren, Johnthan Fuller, Salvador Munoz, Brian Rodney, John Titus, and John Vandewater. (Dkt. Nos. 17, 18, 40, 41, 43, 44, 46, 66.)

On May 15, 2020, the Court granted Plaintiffs' motion to certify a collective action under the FLSA. ("May 15, 2020 Order," Dkt. No. 106.) The Court conditionally certified the following putative FLSA class:

> All current and former non-exempt, hourly-paid security guard employees who worked at any location nationwide at any time within the three years prior to the date of filing of [this Order] through the date of the final disposition of this action who were denied minimum and/or overtime wages in connection with Defendant's policy and/or practice of requiring mandatory pre- and post-shift work to be completed off-the-clock without any compensation.

(May 15, 2020 Order at 12.) In the May 15, 2020 Order, the Court also granted Defendant's motions and petitions to compel arbitration, except as to the PAGA claims, and denied Defendant's motion to stay the entire action. (Id.)

On June 22, 2020, Plaintiffs filed a second amended complaint. ("SAC," Dkt. No. 117.) The SAC alleges claims by Mr. Moore and Mr. Guerra on behalf themselves and of a putative California class ("California Plaintiffs"), and by Ms. Jones on behalf of herself and of a putative Colorado class ("Colorado Plaintiffs"). The SAC asserts ten causes of action as follows:

All Plaintiffs allege:

(1) violations of overtime and minimum wage provisions and payroll record-keeping requirements of the FLSA.

In addition, California Plaintiffs allege the following California law violations:

(2) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210;
(3) California minimum wage violations under Cal. Wage Order No. MW-2019 and Cal. Labor Code §§ 1182.11, 1182.12, & 1194;
(4) California overtime violations under Cal. Wage Order No. 5-2001/7-2001; Cal. Labor Code §§ 510, 1194;
(5) California meal and rest break violations under Cal. Wage Order No. 4-2001 and Cal. Labor Code §§ 218.5, 226.7, & 512;
(6) California record-keeping violations under Cal. Wage Order No. 5-2001/7-2001 and Cal. Labor Code §§ 226, 1174, & 1174.5;
(7) California wage payment violations under Cal. Labor Code §§ 201, 202, & 203; and
(8) California Private Attorney General Act ("PAGA") violations under Wage Order No. 5- 2001/7-2001 and Cal. Labor Code §§ 2698-2699.5.

Colorado Plaintiffs allege the following Colorado law violations:

(9) Colorado minimum wage violations under the Colorado Wage Claim Act ("CWCA"), Colo. Rev. Stat. § 8-4-101 – 8-4-123, the Colorado Minimum Wage Act ("CMWA"), Colo. Rev. Stat. § 8-6-101 – 8-6-119, and Colorado Minimum Wage Order Number 35 ("CMWA"), 7 Colo. Code Regs. § 1103-1; and
(10) Colorado overtime violations under the CWCA and CMWA.

(See SAC.)  After filing the SAC, Plaintiffs filed additional consent to join forms for 29,107 individuals to opt-in as plaintiffs.  (Dkt. Nos. 120–201, 205–216, 218–221, 223–236.)  The Court refers to all those who have opted in as "Opt-In Plaintiffs."

On June 24, 2021, the Court approved the parties' stipulation to stay the case pending approval of a settlement agreement the parties had reached pursuant to arbitration.  ("Stay Order," Dkt. No. 245.)

On December 16, 2021, Plaintiffs filed this Motion, seeking to lift the Stay Order and to confirm the arbitration award.  (See Mot.)  In support of the Motion, Plaintiffs filed the December 15, 2021 order by the arbitrator approving the parties' settlement agreement.  ("Arbitration Award," Dkt. No. 247-1.)

As discussed above, on January 1, 2022, the Court granted in part the Motion with respect to lifting the stay, but reserved ruling on Plaintiffs' request to confirm the arbitration award.  (See Lift Stay Order.)

On February 3, 2022, the Court granted the parties' stipulation for Plaintiffs to file a third amended complaint.  (Dkt. No. 251.)  On February 2, 2022, Plaintiffs filed a third amended complaint.  ("TAC," Dkt. No. 252.)

On February 21, 2022, Plaintiffs filed supplemental documents in support of the Motion.  (Dkt. No. 253.)  Specifically, they filed the following documents:

- Unopposed Motion for Approval of FLSA and PAGA Settlement ("Supplemental Brief," Dkt. No. 253-1)[1];
- Class Action Settlement Agreement ("Settlement Agreement," Dkt. No. 253-2);
- Declaration of Melinda Arbuckle ("Arbuckle Declaration," Dkt. No. 253-3);
- The Settlement Agreement from Hakeem, et al. v. Universal Prot. Serv., L.P., Case No. 34-2019-00270901, Superior Court for the County of Sacramento;
- Plaintiffs' Proposed Third Amended Complaint ("Proposed TAC," Dkt. No. 253-5); and

---

[1] The Court reminds Plaintiffs that all documents presented to the Court must use a font size "14-point or larger," including in the footnotes.  L.R. 11-3.1.1.  Footnotes in the Supplemental Brief are in a smaller size font.

- Arbitration Award ("Arbitration Award," Dkt. No. 253-6).

On June 2, 2022, the Court ordered Plaintiffs to file supplemental briefing to address whether the Settlement Agreement resolves bona fide disputes, as required under the FLSA. (Dkt. No. 257.)  In response, Plaintiffs filed a supplemental brief on June 7, 2022.  ("2d Supplemental Brief," Dkt. No. 258.)

On June 9, 2022, the Court ordered Plaintiffs to file documentation in support of their requested attorneys' fees and costs.  (Dkt. No. 259.)  Plaintiffs filed the requested documentation on June 29, 2022.  ("Arbuckle Fee Request Declaration," Dkt. No. 262.)

## II.   LEGAL STANDARD

**A.  FLSA Settlement Approval**

The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by a contract.  Beidleman v. City of Modesto, 2018 WL 1305713, at *1 (E.D. Cal. Mar. 13, 2018) (citing Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013)).  Employees cannot waive FLSA claims for fear that employers may coerce them into settlement and waiver.  Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (quoting Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 175 (S.D.N.Y. 2015)).  They may settle such claims only if settlement is approved by a federal district court or supervised by the Secretary of the U.S. Department of Labor.  Id.

The Ninth Circuit has not established specific criteria for approving FLSA settlements.  Beidleman, 2018 WL 1305713, at *2.  Courts in this circuit have instead relied on the standard adopted by the Eleventh Circuit, which considers whether a "settlement represents a 'fair and reasonable resolution of a bona fide dispute.'"  Selk, 159 F. Supp. 3d at 1172 (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1355 (11th Cir. 1982)).  "A bona fide dispute exists when there are legitimate questions about 'the existence and extent of Defendant's FLSA liability.'"  Id. (quoting Ambrosino v. Home Depot U.S.A., Inc., 2014 WL 1671489, at *1 (S.D. Cal. Apr. 28, 2014)).  "A court will not approve a settlement … [if] there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute."  Beidleman, 2018 WL 1305713, at *2.

If a bona fide dispute exists, a court may assess the settlement under the factors used to evaluate a proposed class action settlement pursuant to Federal Rule of Civil Procedure 23 ("Rule 23").  Seguin v. County of Tulare, 2018 WL 1919823, at *2 (E.D. Cal. Apr. 24, 2018).  However, application of the Rule 23 factors alone "runs the risk of not giving due weight to the policy behind the FLSA."  Selk, 159 F. Supp. 3d at 1173.  Accordingly, courts apply "a totality of circumstances approach" to FLSA settlements, looking to: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs;

and (6) the possibility of fraud or collusion. Id. If, under these factors, "the settlement reflects a reasonable compromise over issues that are actually in dispute," then "the court may approve the settlement." Id.

**B. PAGA Settlement Approval**

Any settlement of a PAGA action requires court review and approval. Cal. Labor Code § 2699(l)(2). California courts, legislature, and agencies have not "provided any definitive answer" to what standards apply for approval of a PAGA settlement. Flores v. Starwood Hotels & Resorts Worldwide, Inc., 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017). However, "when a PAGA claim is settled, the relief provided for under the PAGA [must] be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court [must] evaluate whether the settlement meets the standards of being 'fundamentally fair, reasonable, and adequate with reference to the public policies underlying the PAGA." O'Connor v. Uber Tech., Inc., 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (quoting the California Labor and Workforce Development Agency ("LWDA"). The parties must also submit the settlement to the LWDA. Cal. Labor Code § 2699(l)(2).

### III. DISCUSSION

**A. FLSA**

The Court examines (1) whether a bona fide dispute exists between the parties, and (2) whether the Settlement Agreement is fair and reasonable in the totality of circumstances.

**1. Bona Fide Disputes**

The Court finds that there are legitimate questions about the existence and extent of Defendant's FLSA liability. The parties disagree on substantive and procedural issues. Substantively, they dispute whether: (1) any Plaintiff worked off-the-clock, (2) such work is compensable or de minimis, (3) Defendant instructed employees not to work off-the-clock pursuant to its policy or practice, (4) Defendant acted willfully, and (5) Plaintiffs' entitlement to liquidated damages. (2d Suppl. Br. at 3–4.) Procedurally, the parties dispute whether a class of Plaintiffs could include California class members and whether the matter should have been arbitrated. (Id. at 5–6.) These issues regarding "FLSA coverage or computation of back wages" constitute bona fide disputes. Nen Thio v. Genji, LLC, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014). Accordingly, Plaintiffs have demonstrated bona fide disputes.

//
//
//
//
//
//

2. **Proposed Settlement Is Fair and Reasonable**

   a. **Plaintiffs' Range of Possible Recovery**

First, "[a] district court evaluates the plaintiff's range of potential recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims." Selk, 159 F. Supp. 3d at 1174 (citations omitted).

Here, the Settlement Agreement establishes a gross settlement fund of $4,350,000.00, which will be apportioned as follows:

- Net Settlement Fund:            $1,503,596.00
- Class Representative Payments:  $20,000.00
- Settlement Administration Costs: $573,350.00
- Other Costs:                    $13,054.00
- Attorneys' Fees:                $1,740,000.00
- PAGA Penalties:                 $500,000.00

(Suppl. Br. at 3–5; Settlement Agreement ¶¶ 33–38.)

The Court finds that the range of recovery provided by the Settlement Agreement is fair and reasonable. Each Opt-In Plaintiff will receive a share of the Net Settlement Fund based on the number of workweeks worked during the Class Period. (Id. at 4; Settlement Agreement ¶¶ 22, 39.) Of the 29,107 Opt-In Plaintiffs, the average Plaintiff will recover approximately $52.00. (Suppl. Br. at 13.) Any Opt-In Plaintiff who did not work for applicable weeks will receive a payment of $20.00. (Settlement Agreement ¶ 39(c).) Plaintiffs argue that because certain "gap time" claims are not recognized under the FLSA, these payments allow even individuals who did not work the minimum number of hours to still recover. (Suppl. Br. at 13.)

In addition, the three Named Plaintiffs and Opt-In Plaintiff Dennis Clay will each receive a class representative enhancement payment of $5,000.00. (Id. ¶ 11.) This payment recognizes the individuals "for being instrumental in the early investigation and certification of the case, and for reputational damage based on their public support of the litigation." (Suppl Br. at 3.) Courts generally find that a $5,000 incentive award is "presumptively reasonable." Haralson v. U.S. Aviation Servs. Corp., 383 F. Supp. 3d 959, 975 n.11 (N.D. Cal. 2019). Accordingly, the Court concludes that this factor weighs in favor of settlement approval.

   b. **Stage of Proceedings and Amount of Discovery Completed**

The Court next considers the stage of the proceedings and the amount of discovery completed to ensure the parties "have an adequate appreciation of the merits of the case before reaching a settlement." Selk, 159 F. Supp. 3d at 1177. Here, though the parties did not conduct formal discovery, Defendant produced extensive pay, time, and policy records for the period of three years prior to the filling of this action. (Arbuckle Decl. ¶ 19; Suppl. Br. at 14.) Based on

this data, the parties were able to calculate exposure models and better understand the merits of their respective claims and defenses.  (Arbuckle Decl. ¶¶ 19, 25.)  Moreover, the parties deposed several Opt-In Plaintiffs and engaged in two mediations, one on October 7, 2020 and the other on April 15, 2021.  (Id. ¶¶ 18, 21–22.)  The second mediation resulted in a Memorandum of Understanding and the Settlement Agreement.  (Id. ¶ 22.)  Accordingly, the Court finds that the parties have sufficiently litigated this action to understand their respective positions.  This factor weighs in favor of approval.

### c. Seriousness of the Litigation Risks Faced by the Parties

"Courts favor settlement where 'there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all.'"  Seguin, 2018 WL 1919823, at *4 (quoting Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 255 (N.D. Cal. 2015)).  Here, Plaintiffs identify the following barriers to recovery, or even prevailing at trial: (1) the lack of documentation of Plaintiffs' off-the-clock work, (2) the possibility that any off-the-clock work would be non-compensable "gap time", (3) the difficulties of demonstrating Defendant's willfulness, and (4) the difficulties of class certification.  (Suppl. Br. at 15.)  The Court agrees that these risks are significant.  Accordingly, this factor weighs in favor of settlement approval.

### d. Scope of Any Release Provision in the Settlement Amount

"A[n] FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself."  Slezak v. City of Palo Alto, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017).  The Court finds that this is the case here.  The Agreement provides that only those Opt-In Plaintiffs who receive a settlement check will "release[] and discharge[] all claims, rights, demands, liabilities and causes of action under the federal Fair Labor Standards Act (29 U.S.C. §§ 201-219 ('FLSA')) brought in the Lawsuit or which could have been brought in the lawsuit during the Class Period."  (Settlement Agreement ¶ 26.)  Because this release provision does not exceed the scope of FLSA claims at issue in this action, this factor weighs in favor of settlement approval.

### e. Experience and View of Counsel and the Opinion of Plaintiffs

"The opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases."  Selk, 159 F. Supp. 3d at 1176.  Plaintiffs' counsel, Melinda Arbuckle, has extensive experience representing employees in class and collective actions in numerous cases. (Arbuckle Decl. ¶¶ 7–15.)  Her firm has represented Plaintiffs since this action's commencement.  (Id. ¶ 16.)  Ms. Arbuckle declares that the proposed Settlement Agreement "is fair and reasonable."  (Id. ¶ 24.)  Under these facts, the Court concludes that this factor weighs in favor of approval.

//
//
//
//

### f. Possibility of Fraud or Collusion

"The likelihood of fraud or collusion is low … [when] the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator." Slezak, 2017 WL 2688224, at *5. Ms. Arbuckle declares that the Settlement Agreement was reached through "extensive, arm's length negotiations between experienced counsel." (Arbuckle Decl. ¶ 23.) As noted above, the parties also engaged in two mediations, the latter of which resulted in the Settlement Agreement. Accordingly, the Court finds that this factor weighs in favor of approval.

In sum, because all six factors weigh in favor of settlement approval, the Court concludes that the Settlement Agreement constitutes a fair and reasonable compromise of bona fide disputes under the FLSA.

### 3. Attorneys' Fees and Costs

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." Selk, 159 F. Supp. 3d at 1180 (quoting Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012)); see also 29 U.S.C. § 216(b) (finding that a court "shall … allow a reasonable attorney's fee to be paid by the defendant" when an employer violates certain FLSA provisions). "When a settlement produces a common fund for the benefit of the entire class, a court has the discretion to apply either the percentage-of-recovery method or the lodestar method to determine a reasonable attorney's fee." Dashiell v. County of Riverside, 2018 WL 3629915, at *5 (C.D. Cal. July 19, 2018) (citing Selk, 159 F. Supp. 3d at 1180). "Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%." In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 949 (9th Cir. 2015).

Here, Plaintiffs' counsel seeks $1,740,000.00 in attorneys' fees and $586,404.00 in costs, which represents $573,350.00 in settlement administration costs and $13,054.00 in other costs. (Suppl. Br. at 3–4.) The requested fee award represents a 1.76 upward multiplier of their lodestar and 40% of the total settlement amount. While an attorneys' fee award that is 40% of the total settlement is higher than the 25% benchmark deemed reasonable by the Ninth Circuit, Selk, 159 F. Supp. 3d at 1180, the Court finds that the requested amount is reasonable under these circumstances. Plaintiffs' counsel declares a contingency fee arrangement between Plaintiffs and Plaintiffs' counsel calls for an attorney fee award of 40%. (Arbuckle Decl. ¶ 26.) Moreover, the Settlement Agreement also allows Plaintiffs' counsel to recover "attorneys' fees not in excess of forty percent (40%) of the Gross Settlement Amount, or One Million Seven Hundred Forty Thousand Dollars ($1,740,000)." (Settlement Agreement ¶ 3.) In addition, Plaintiffs' counsel submits sufficient documentation of their lodestar, as well as costs, and demonstrates that the work required and results achieved justify their requested multiplier. (See Arbuckle Fee Request Decl.) Accordingly, the Court concludes that the requested attorneys' fees of $1,740,000.00 and costs of $586,404.00 are reasonable.

//

### B. PAGA

The Settlement Agreement provides $500,000.00 in recovery for alleged PAGA violations for the period of February 2, 2020 through the date of the arbitration award, and requires notification to the LWDA and payment of 75% of the recovery to the LWDA. (Suppl. Br. at 20.) Plaintiffs' counsel represents that the recovery will deter future violations of PAGA based on the conduct at issue in this case. (Id.) Under these facts and in light of the above discussion, the Court finds that the Settlement provides genuine and meaningful relief, consistent with PAGA's purpose to benefit the public. Moreover, the Court finds that the Settlement Agreement is fundamentally fair, reasonable, and adequate.

In sum, the Court concludes that the Settlement Agreement meets the requirements for approval under the FLSA and PAGA. Accordingly, the Court APPROVES the Settlement Agreement. The Court GRANTS the Motion and CONFIRMS the Arbitration Award.

### IV. CONCLUSION

For the reasons above, the Court GRANTS the Motion and CONFIRMS the Arbitration Award. The Court DISMISSES the case WITH PREJUDICE. Except as provided by the Arbitration Award, each side shall bear its own costs and attorneys' fees. The hearing set for July 11, 2022 is VACATED. The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED.**